UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CLARENCE L. SMITH,                      )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        No. 3:20-CV-314-HBG
                                        )
KILOLO KIJAKAZI,[1]                     )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties. [Doc. 16]. Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 11] and Defendant's Motion for Summary

Judgment. [Doc. 19]. Clarence L. Smith ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On August 31, 2017, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §

401 *et seq.*, claiming a period of disability that began on May 1, 2017.[2] [Tr. 21, 72, 159]. After

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

[2] Plaintiff notes in his brief that he amended his alleged onset of disability date to April 19,
2018; however, Plaintiff did not amend his onset date while the case was still pending before the

his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 72, 90, 106]. A hearing was held on March 25, 2019. [Tr. 40–60]. On May 13, 2019 the ALJ found that Plaintiff was not disabled. [Tr. 18–32]. The Appeals Council denied Plaintiff's request for review on May 20, 2020 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on July 15, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: right knee disorder, status post (s/p) surgery; diabetes mellitus, type II, with polyneuropathy; osteoarthritis of the right hip; obesity; and degenerative disc disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

---

ALJ. Plaintiff requested to amend his alleged onset date in a February 17, 2020 letter to the Appeals Council. [Tr. 254]. Subsequently, the Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner. [Tr. 1–3]. Plaintiff did not make his request for an amended onset date to the ALJ so the ALJ made his decision using the original alleged onset date—May 1, 2017, and the final decision of the Commissioner is based on that date. Therefore, the Court's review is also based on the original alleged onset date.

2

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently. With normal breaks in an eight-hour workday, he can sit for six hours and stand and/or walk for six hours; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can frequently balance; can tolerate occasional exposure to vibration and extreme heat; and can tolerate one out of eight hours of exposure to dangerous hazards, such as unprotected heights and dangerous moving machinery.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on April 19, 1968 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 23–32].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

3

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation

4

omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

5

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff argues generally that the ALJ committed reversible error because he failed to comply with Social Security Ruling ("SSR") 96-8p in assessing Plaintiff's RFC. [Doc. 11 at 2]. Specifically, Plaintiff asserts that the ALJ failed to properly evaluate the severity of many of Plaintiff's symptoms and that the ALJ relied on a hypothetical question he posed to the vocational expert ["VE"] that did not accurately describe the claimant as the relevant rules require. [*Id.* at 2, 7]. Plaintiff states that the ALJ found him to be limited to light work when he should have been limited to sedentary work based on the record in its entirety. Plaintiff urges the Court to reverse

6

the Commissioner's final decision and remand for an immediate award of benefits. Alternatively, Plaintiff requests for the Court to remand the decision and direct the Commissioner to properly consider the combination and severity of Plaintiff's impairments. The Commissioner argues that the ALJ did not err in making the RFC finding and that the ALJ's decision is supported by substantial evidence.

### A. ALJ's Evaluation of Plaintiff's Symptoms and RFC Finding

Plaintiff argues first that the ALJ failed to properly evaluate the severity of Plaintiff's symptoms, including his ability to stand and walk. [Doc. 12 at 2]. Plaintiff begins by referencing the findings of Dr. Eva Misra—a consultative examiner—who noted that Plaintiff had uncontrolled diabetes with A1c of 9 and that Plaintiff's blood sugar levels were 250. [*Id.* at 2–3]. Plaintiff refers to Dr. Misra's examination notes in which she opined to Plaintiff

> [retaining] the capacity to occasionally lift and carry including upward pulling for up to one-third of an eight-hour workday to a maximum of 10 lbs . . . . [Plaintiff] can frequently lift and carry for one-third to two-third of an eight-hour workday to maximum of less than 10 lbs . . . . [and Plaintiff] can stand and walk with normal breaks for total of less than two hours in an eight-hour workday and sit without restrictions.

[Tr. 349]. The ALJ evaluated Dr. Misra's medical opinion and found it unpersuasive because "she noted that the [Plaintiff] appeared unreliable, yet found that [Plaintiff] was limited to less than a full range of sedentary work." [Doc. 12 at 3 (quoting [Tr. 29])]. Plaintiff argues that the ALJ's evaluation of Dr. Misra's medical opinion was flawed partially because the ALJ determined that Plaintiff had a normal range of motion and strength in his lower extremities while failing to consider Dr. Misra's finding of crepitance with tenderness on his left knee with lipoma. [*Id.* (citing [Tr. 349])].

Furthermore, Plaintiff argues that his A1c score and blood sugar levels are not affected by his own credibility. [*Id.*]. Plaintiff then cites his answer given at the hearing [Tr. 46] concerning the ALJ's inquiry into Plaintiff's Advance Auto Parts Job: "standing behind the counter all day . . . my back and feet and legs were killing me . . . ." [Doc. 12 at 3]. Plaintiff also testified that "when he goes to the store with his wife, he sometimes goes in and can walk approximately an hour or so before he has to go to the car or the bench to sit down because his feet, legs, and hip pain won't let him walk." [*Id.* (citing [Tr. 48])]. To support that testimony, Plaintiff states that his diabetic neuropathy and lower extremity impairments are documented and result in his chronic pain. [*Id.*].

As an example, Plaintiff provides that on June 6, 2017, Mark Hellman, D.P.M. ("Dr. Hellman") noted that Plaintiff had bilateral leg pain, hip pain, continuing neuropathy symptoms, and that his blood sugars were not well controlled. [*Id.* (citing [Tr. 674])]. Dr. Hellman noted that Plaintiff reported taking Lyrica was still helping with his pain but "maybe not as good as it used to." [Tr. 674]. Plaintiff continues, stating that "Dr. Hellman observed multiple varicosities in both legs, mild edema in both lower legs, ankles, and feet with chronic digestive/stasis changes in the lower legs between the ankles and calves . . . . [and] Plaintiff had 'brawny coloration with this consistent with prolonged venous insufficiency changes . . . Chronically, he is also going hypersensitive as well.'" [Doc. 12 at 3–4 (citing [Tr. 674])]. Dr. Hellman diagnosed Plaintiff with "[p]olyneuritis symptom/neuropathy pain bilateral feet with poor glycemic control index with his diabetes. Suggestive lower back contribution as well/spinal. Venous insufficiency with lower extremity swelling, chronic with chronic statis changes bilaterally." [Tr. 674].

Plaintiff then claims that the ALJ failed to acknowledge the severity of Plaintiff's back impairment, which is also documented in the objective medical evidence. [Doc. 12 at 4]. Plaintiff

8

states that "[i]n discussing the 11-2-17 MRI of the lumbar spine, the ALJ mischaracterized the results and ultimately failed to acknowledge the severity of Plaintiff's back pain." [*Id.*]. The ALJ stated that the MRI found "multilevel degenerative disc disease with mild to moderate bulging and mild to moderate central canal narrowing and stenosis." [Tr. 27]. Yet, Plaintiff maintains that

> [t]he ALJ failed to discuss findings of **moderate to severe** bilateral facet hypertrophy flattening the posterior thecal sac at L1-2, **moderate to severe** posterior facet arthropathy creating mild to moderate central canal narrowing at L2-3, **moderate to severe** bilateral facet hypertrophy with fluid in both facet joints creating **moderate** central canal stenosis at L3-4, severe bilateral facet hypertrophy with moderate central canal stenosis at L4-5 , and **moderate** loss of disc space height with broad disc bulging and **moderate** bilateral facet hypertrophy at L5-S1.

[Doc. 12 at 4 (citing [Tr. 576–77]) (emphasis added by Plaintiff)]. Plaintiff stresses that the cause of his severe back pain is confirmed by the objective medical test results of the MRI and that the results of that MRI are consistent with other medical evidence in the record and support Plaintiff's statements about his pain. [*Id.*].

Plaintiff states that SSR 16-3p requires the ALJ to consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record, and Plaintiff seemingly argues that the ALJ failed to do so in this case. *See* [*id.* at 5]. Plaintiff argues that if a "claimant has a medical condition, confirmed by objective medical evidence, that could reasonably be expected to produce severe pain, claimant must be found disabled. [*Id.* (citing *Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986))].

Next, Plaintiff relates that he has manipulative limitations in his right hand that require regular steroid injections. [*Id.* at 5]. Plaintiff argues that the ALJ's hypothetical question he posed to the VE failed to refer to any non-exertional manipulative limitations. [*Id.*]. Plaintiff states that "SSR96-9p provides that 'a nonexertional limitation is an *impairment-caused* limitation affecting

such capacities as . . . reaching, handling, fingering, and feeling.'" [*Id.* (emphasis added by Plaintiff)]. Plaintiff states that his right hand non-exertional manipulative limitations are documented in and established by the record—with Plaintiff proceeding to point to various parts of the record from December 2017 to March 2019 in support of that contention.[3] [*Id.* at 5–6].

Plaintiff also claims that the ALJ failed to appropriately consider his obesity and its impacts on his breathing and ability to function during an eight-hour workday. [*Id.* at 6]. Plaintiff directs the Court to an esophagogastroduodenoscopy with biopsy performed by Dr. Terry Bingham and his subsequent remarks. [*Id.*]. Dr. Bingham noted:

> [t]his was a huge obese head and neck. The airway was surrounded by fatty folds of the aryepiglottic folds. His uvula was long and floppy. His epiglottis was edematous. I really am concerned about this young man's capability to breathe and properly oxygenate himself . . . . There is nothing here that demands surgery. In fact this man is a very high surgical risk because of his airways, obesity.

[Tr. 596–97]. Plaintiff says that "SSR 19-2p states that '[p]eople with an MDI of obesity may have limitations in the ability to sustain a function over time. In cases involving obesity, fatigue may affect a person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea.'" [*Id.* at 6–7]. Furthermore, Plaintiff states that he has been diagnosed with obstructive sleep apnea, he is morbidly obese, and the medical evidence includes documentation of his complaints of fatigue. [*Id.* at 7 (citing [Tr. 761, 769, 419,

---

[3] Plaintiff lists: his testimony that he is unable to close his hands into a fist when his hands dry out "real bad," problems holding thing, and dropping things [Tr. 52]; his testimony that he has seen a dermatologist for a number of years for severe eczema on his hands for which he has had to regularly receive shots to deal with the pain [Tr. 51–52]; a physical examination showing excess dry skin and psoriasis-like patches of right hand wrist [Tr. 725]; undergoing a right ring trigger finger release [Tr. 781]; right hand pain, stiffness and swelling [Tr. 778] and physical examinations revealing reduced range of motion in the right ring finger with tenderness over the A-1 pulley with triggering [Tr. 779, 775]; physical examination showing right ring finger and trigger fingers are hard to straighten and dyshidrotc eczema in both hands [Tr. 364].

825, 562, 694, 703, 709, 715, 722])].  That considered, Plaintiff argues that the medical evidence of record supports Plaintiff's inability to perform light work because of his various symptoms that were under analyzed by the ALJ—leading to an erroneous RFC finding.  [*Id.*].

The Commissioner contends that the ALJ properly evaluated the severity of Plaintiff's symptoms—including his ability to stand and walk and evidenced by the objective medical evidence not supporting Plaintiff's allegations of disabling level impairments or standing and walking limitations beyond those contained in the RFC finding.  [Doc. 20 at 10 (citing [Tr. 27])].  The Court generally agrees with the Commissioner's argument for the reasons more fully explained below and finds that there is substantial evidence in the record to support the ALJ's decision.

The ALJ expressly considered Plaintiff's allegations of severe physical impairments—including pain—and their debilitating effects on Plaintiff's ability to work.  [Tr. 27].  In reference to his back and lower extremity pain, the ALJ provided,

> [t]he claimant alleged that his severe physical impairments prevented him from being able to work . . . .  He testified that his back and hips started hurting 10 years prior, and that if he walked for too long the pain would be unbearable.  He alleged that he also had issues with lower extremity pain due to his right knee disorder and his diabetic neuropathy.

[*Id.*].  However, as the Commissioner argues, the ALJ considered that Plaintiff "often displayed a normal gait, normal range of motion of the lower extremities, or normal strength in the lower extremities."  [Doc. 20 at 10 (citing [Tr. 27, 349, 369, 437, 468, 471, 562–63, 569, 573, 672–73, 798, 800, 804, 807, 810, 813, 816, 818])].  This, in part, led to the ALJ concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  [Tr.

11

27]. These findings serve as substantial evidence to support the ALJ's determination of Plaintiff's standing and walking limitations as described in the RFC.[4]

Furthermore, the ALJ's analysis of Plaintiff's allegations of his physical limitations and subsequent finding that they were inconsistent with the objective medical evidence were appropriate under the circumstances. An ALJ may consider the inconsistencies between a claimant's allegations and the medical evidence—as the ALJ did here when discounting Plaintiff's allegations concerning the severity of his impairments. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record."); *see also* Social Security Ruling 16-3p ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with the objective medical evidence and the other evidence."). The Court also agrees with the Commissioner that the ALJ appropriately considered Plaintiff's reported improvement with medication as one factor in evaluating the consistency of Plaintiff's subjective complaints. [Tr. 27, 319, 672 ("[Plaintiff] stated that his Lyrica was still helping with his neuropathy pain.")]; *see Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (upholding a denial of benefits when the "medical evidence reflected that appellant's impairments were controlled with medication and were not seriously disabling."); 20

---

[4] For example, the ALJ considered Plaintiff's "past medical history of treatment for all of his severe impairments," including: his history of diabetes mellitus and degenerative disc disease from 2010; treatment in 2016 for worsening right knee pain; imaging done on his knee; his obesity; diabetic neuropathy; treatment for joint pain and neuropathy along with physical examinations not finding any crepitus, decreased mobility, limping, or instability; presenting with strong muscle strength to both lower extremities any lonely slightly diminished light touch sensation; among other things. [Tr. 27].

C.F.R. § 404.1529(c)(3)(iv) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms").

When objective evidence alone cannot establish a disability, the ALJ has the "power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (citing *Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* at 531–32 (citing *Bradley*, 862 F.2d at 1227; *cf. King v. Heckler*, 742 F.2d 968, 974–75 (6th Cir. 1984) (noting the lack of substantial evidence for an adverse credibility finding where the only reasonable conclusion supported by the evidence is that the claimant does not possess the RFC to perform any gainful employment). The evidence regarding the severity of Plaintiff's impairments is inconsistent with the other evidence of record and can support more than one reasonable conclusion. In determining that Plaintiff's subjective allegations were not entirely credible, the ALJ gave numerous reasons supported by the record. The Court will not second-guess the ALJ's finding. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.").

Plaintiff also takes issue with the ALJ's evaluation of consultative examiner Dr. Misra's medical opinions. Dr. Misra opined that Plaintiff would be limited to a range of sedentary exertional level work. [Tr. 349]. The ALJ found Dr. Misra's opinion to be unpersuasive and gave adequate reasoning for that evaluation. [Tr. 29]. Since Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluation of medical opinion

evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)–(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;

14

**(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). Additionally, the Revised Regulations explain, "[a] prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in [a claimant's] current claim based on their review of the evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1513(a)(5).

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing

15

the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). With respect to an ALJ's failure to base the RFC on a medical opinion, the Sixth Circuit has recently found that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). However, "[a]lthough the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021).

The Court finds that the ALJ's evaluation of Dr. Misra's opinion was done in accordance with the relevant rules and procedure discussed above. The ALJ found Dr. Misra's medical opinion was not persuasive even though she "conducted the most comprehensive physical examination of the claimant and based her opinion on the findings of that evaluation." [Tr. 29]. The ALJ states that:

> [Dr. Misra] noted that the claimant appeared unreliable, yet found that he was limited to less than a full range of sedentary work. Although her observations that he was not as limited as alleged are generally consistent with the record, his treatment history does not support greater limitations than those in the residual functional capacity . . . . As mentioned previously, the claimant presented at later treatments with range of motion and grip strength within normal limits.

Here, the ALJ discussed and analyzed the two most important factors when evaluating the medical opinion of Dr. Misra—being consistency and supportability. Specifically, the ALJ found that Dr. Misra's opinion was unsupported partially because—during her examination of Plaintiff—she reported that he seemed unreliable and put forth poor effort. Thus, the ALJ appropriately

16

concluded that Dr. Misra's restrictions to solely sedentary work were unsupported by her own findings. As well, it is clear from the ALJ's discussion of Dr. Misra's opinion that he considered consistency—finding parts of her opinion to be consistent and others to be inconsistent with the other evidence of record. The Court will not disturb the ALJ's evaluation of the opinion in light of substantial evidence supporting his reasoning and his adherence to the current procedural requirements for assessing a medical opinion.

Plaintiff also argues that the ALJ "failed to acknowledge the severity of Plaintiff's back impairment as documented in the objective medical evidence." [Doc. 12 at 4]. The Court finds this argument to be unsupported. As the Commissioner points out, "the ALJ specifically found that degenerative disc disease was a severe impairment in this case." [Doc. 20 at 13]. The Court agrees with the Commissioner that this "undercuts" Plaintiff's argument that the ALJ "failed to acknowledge the severity" of his back impairment. It appears that the Plaintiff would have interpreted the severity of his own symptoms differently than the ALJ, but that does not give the Court reason to invalidate the ALJ's decision. Here, the Court finds that the ALJ was well within his "zone of choice" based on the ample evidence in the record. *See Halter*, 246 F.3d at 773. Additionally, Plaintiff claims that the ALJ "mischaracterized" the results of the November 2, 2017 MRI of his lumbar spine by referencing some but not all of the findings from the report. The Court agrees that the ALJ's discussion of the imaging seemingly indicates that the ALJ was summarizing some of the findings instead of listing them in their entirety. [Tr. 27]. The Court also agrees with the Commissioner that this was but one aspect of the objective medical evidence and also only one of the factors relied on by the ALJ in his analysis. Therefore, the Court finds this argument to be unsupported, as well.

Plaintiff's argument that the ALJ erred by not incorporating manipulative limitations into

17

the RFC is similarly unsupported. The ALJ noted that the record of evidence did not support functional limitations due to Plaintiff's reported hand pain. [Tr. 24]. Specifically, the ALJ considered that Plaintiff was noted to get the condition once a year and that this condition would improve upon a steroid injection. [*Id.* (citing Exhibit 2F/17)]. Furthermore, the ALJ stated "claimant still required treatment for right hand pain in January 2018, but his therapy records did not indicate that he had any functional limitations in his ability to perform basic work activities from this impairment." [*Id.*]. Therefore, the ALJ found Plaintiff's eczema and hand pain to not be severe—a finding supported by substantial evidence, including Plaintiff often exhibiting full strength in the upper extremities, Plaintiff exhibiting close to full grep strength and the fact that Plaintiff was not taking any pain medications among other things. *See e.g.*, [Tr. 349, 775, 779, 781, 812–13, 815–16, 818]. The Court has also considered the Commissioner's argument that Plaintiff did not even list hand pain as one of his "most severe" impairments at the hearing when asked by the ALJ. *See* [Tr. 49–50].

Likewise, Plaintiff claims that the ALJ did not properly consider his obesity and its effects on his breathing and ability to function during an eight-hour workday. Yet, as the Commissioner argues, the ALJ also found obesity to be a severe impairment in this case, being part of the reason for the ALJ limiting Plaintiff to light exertional level work with certain additional postural and environmental limitations. [Tr. 28]. "Pursuant to SSR 02-1p, an ALJ must consider the functional limitations resulting from a medically determinable impairment of obesity in the RFC assessment, in addition to limitations resulting from any other physical or mental impairment." *Rinker v. Comm'r of Soc. Sec.*, No. 1:16-CV-376-SKL, 2017 WL 2789440, at *4 (E.D. Tenn. June 27, 2017). The Sixth Circuit has held, however, that SSR 02-1p does not require "any particular procedural mode of analysis for obese disability claimants." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x

18

435, 443 (6th Cir. 2010) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). Rather, it provides that "obesity, in combination with other impairments, 'may' increase the severity of other limitations." *Id.* (quoting *Bledsoe*, 165 F. App'x at 412). Obesity should be considered on a case-by-case basis because it "may or may not increase the severity or functional limitations of the other impairment." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).

The Court finds that the ALJ adequately considered Plaintiff's obesity in this case and incorporated limitations into Plaintiff's RFC to that effect. *See* [Tr. 28 ("As a result of the claimant's obesity, in consideration with the claimant's other severe impairments, I limited the claimant to a light exertional level with postural and environmental limitations.")]. As an example, Plaintiff argued that his obesity was significant because it impacted his breathing; however, the ALJ considered that Plaintiff often denied shortness of breath or wheezing and respiratory findings were negative. *See, e.g.*, [Tr. 688, 694–95, 700, 706, 712]. Therefore, the Court concludes that the ALJ appropriately considered all the symptoms Plaintiff raises in his argument, and the resulting RFC finding is supported by substantial evidence in the record.

**B. Appropriateness of ALJ's Hypothetical Questions**

Plaintiff then moves to his argument that the hypothetical question posed by the ALJ to the VE failed to accurately describe him. The Court notes, however, that Plaintiff also uses this part of the brief to restate many of his arguments concerning the ALJ's RFC decision that were analyzed above—that being said, the Court will not needlessly replicate the same analysis in great detail for this section. Plaintiff states that "[f]or a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant in all significant, relevant respects." [*Id.* (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035–36 (6th Cir. 1994); *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987))]. Specifically, Plaintiff claims that

19

the hypothetical question posed to the VE "described an individual whom, *inter alia*, cannot perform his past work, can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently, and can sit for six hours and stand/walk for six hours with normal rest breaks in an eight-hour day." [*Id.* (citing [Tr. 56])]. The VE then testified that such an individual would be able to perform the following unskilled, light work: (1) office helper; (2) marker, retail; and (3) vending machine attendant. [Tr. 57 (specific DOT citations omitted)]. Plaintiff states that the ALJ relied on this first hypothetical question in making his decision. [Doc. 12 at 7 (citing [Tr. 26])].

For the second hypothetical question, the ALJ had the VE assume the same facts as the first question; however, the individual—assuming normal breaks in an eight-hour day—would require at least two additional fifteen-minute breaks on a consistent basis. [Tr. 57]. Considering those limitations, the VE testified that there would be no work the individual could perform. [Tr. 58]. Plaintiff states that, "[u]pon questioning by Plaintiff's attorney, VE Bullard testified that Plaintiff would be limited to sedentary work based on consultative examiner Dr. Misra's opined limitations." [Doc. 12 at 7–8 (citing [Tr. 58])]. Plaintiff stresses that his testimony—along with the medical evidence of record both before and after his amended disability onset date—support a greater degree of limitation than those the ALJ described to the VE. [*Id.* at 8]. As will be explained, the Court does not find this argument to be supported—based substantially on the Court's earlier discussion of the ALJ's evaluation of Dr. Misra's opinion and the other evidence of record.

Where the Commissioner relies upon VE testimony to demonstrate the existence of a substantial number of jobs that a claimant can perform, the VE must testify on the basis of the claimant's "residual functional capacity and . . . age, education, and work experience" in order to assess whether a claimant "can make an adjustment to other work." *See* 20 C.F.R. § 1520(a)(iv)

20

& (v); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (citations omitted); *see Stanley v. Sec'y of Health & Human Servs.,* 39 F.3d 115, 118–19 (6th Cir. 1994) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). The Court finds that the hypothetical questions here conformed to these requirements, as they were based only on the limitations deemed to be credible by the ALJ, and substantial evidence exists in the record to support those limitations. Therefore, the Court finds Plaintiff's argument here to be unsupported.

Plaintiff also addresses a misquoting of his hearing testimony by the ALJ. In his decision, the ALJ stated that Plaintiff "alleged that he on good days could walk for two *miles* at a time before his hips hurt." [Tr. 27 (emphasis added)]. However, Plaintiff testified at the hearing that he could walk "maybe two *aisles* in the store" before his hips hurt so badly that he could hardly walk. [Tr. 48 (emphasis added)]. Further, the ALJ stated that Plaintiff "alleged that he could . . . lift and carry only 20 pounds." [Tr. 27]. However, Plaintiff testified that "I can probably lift 20 pounds but carrying it's a different—I'm not able to walk and carry." [Tr. 49]. Plaintiff argues that "[i]t is unclear how these inconsistencies may have impacted both the hypothetical question and the ALJ's RFC determination. If the ALJ misstated Plaintiff's testimony and used the misstatements as a basis for his RFC determination, the error significantly affects the validity of the unfavorable decision." [Doc. 12 at 8].

The Court agrees with the Commissioner that the above misstatements regarding Plaintiff's testimony were harmless error at most. *See Wysocki v. Berryhill*, No. 16-11753, 2017 WL

21

3084109, at *6 (E.D. Mich. June 30, 2017) ("It is true that the ALJ misstated some [of Plaintiff's] testimony, but [the ALJ's] credibility analysis is otherwise supported [by] substantial evidence."); *see also Lewis v. Colvin*, No. 3-14-1715, 2015 WL 6160195, at *10 (M.D. Tenn. Oct. 20, 2015) ("it is evident that the ALJ misstated Plaintiff's testimony in his opinion. Nevertheless, the record clearly indicates that Plaintiff stated on two separate occasions that she could lift no more than ten pounds. Furthermore, Plaintiff's response during her oral hearing does not contradict a finding that she could lift up to ten pounds . . . . The Court therefore views the ALJ's misstatement regarding Plaintiff's testimony as harmless error."); *Smith v. Astrue*, No. 1:10CV136, 2011 WL 4833120, at *11 (N.D. Ohio Oct. 12, 2011) ("The ALJ did misstate Plaintiff's testimony as to the use of a cane . . . . However, the Court finds that this error was harmless as it appears to be only a minor factor that the ALJ relied upon in assessing Plaintiff's credibility."). The Commissioner acknowledged that the ALJ misstated Plaintiff's testimony here, but that is not enough. The ALJ considered a multitude of factors, as already discussed, in making the RFC finding—not just the misstated portions of Plaintiff's testimony. It is not evident that the ALJ drew any substantial negative inferences from these statements and, furthermore, the ALJ provided a detailed analysis of the other relevant evidence supporting his RFC finding—making this harmless error at most.

Plaintiff then restates his argument that the ALJ's decision was made in error because he failed to properly evaluate the severity of Plaintiff's impairments, specifically, the impact of Plaintiff's leg and back pain on his ability to stand and walk. [Doc. 12 at 8]. Plaintiff maintains that the medical evidence of record does not support the ALJ's decision to find Plaintiff capable of performing light work. [*Id.* at 9]. Plaintiff goes on to list many aspects of the record to support his argument that he is unable to stand and/or walk for six hours in an eight-hour workday, which he states is a requirement of light work pursuant to SSR 83-10. *See* [Doc. 12 at 9–13]. The Court

22

agrees with the Commissioner that—to the extent the second part of Plaintiff's brief retreads his previous arguments regarding the purported lack of substantial evidence—these arguments are still unsupported. Thus, the Court finds that there is no cause for remand of Plaintiff's case.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 11**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Bruce Guyton*

United States Magistrate Judge

23